MAYER·BROWN

Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel +1 202 263 3000
Main Fax +1 202 263 3300
www.mayerbrown.com

**Archis A. Parasharami**
Direct Tel +1 202 263 3328
Direct Fax +1 202 263 5328
aparasharami@mayerbrown.com

December 18, 2017

**VIA ECF**

The Honorable Frederic Block
United States District Court for the
 Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Chaudry v. Lyft, Inc.*,
        No. 1:17-cv-6135-FB-RER
        **Pre-motion conference letter on proposed
        motion to compel arbitration**

Dear Judge Block:

We represent defendant Lyft, Inc. ("Lyft") in the above-referenced action.  Pursuant to Your Honor's Individual Motion Practices and Rules, Lyft requests a pre-motion conference to seek leave to move, under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), for an order (i) compelling arbitration of all of the claims brought by plaintiff and (ii) staying all proceedings pending the outcome of arbitration.

The plaintiff, Saif Chaudhry, alleges that he has been a driver on Lyft's platform since 2015.  Compl. ¶¶ 39-40.[1]  He alleges that Lyft misclassifies drivers who use Lyft's platform as independent contractors, improperly includes in its calculation of commissions charges related to the New York Black Car Fund and New York City sales taxes, and uses misleading advertising (*see id.* ¶¶ 4-9), and he asserts a variety of causes of action based on these allegations.  *Id.* ¶¶ 81-189.  He seeks to represent a putative class of all "similarly situated" Lyft drivers.  *Id.* ¶ 16.

Lyft denies that Mr. Chaudhry's claims have merit.  But the Court need not reach the merits because Mr. Chaudhry agreed to resolve his disputes with Lyft by arbitration on an individual basis.  The FAA requires enforcement of that agreement.

In its motion, Lyft will show that Mr. Chaudhry assented to the Lyft Terms of Service, including its arbitration provision, on multiple occasions—most recently on October 4, 2016.  The last of those acceptances came after Lyft's update to its Terms of Service on September 30, 2016.  After the update, Lyft users who opened the Lyft App were required to consent to the updated Terms of Service, which Lyft programmed to automatically appear on a screen in the Lyft App.

---

[1]     The case is captioned under the name "Chaudry," and one paragraph in the complaint uses that spelling, but the majority of the paragraphs in the complaint spell the plaintiff's name as "Chaudhry."  The latter spelling is consistent with Lyft's records.

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

The Honorable Frederic Block
December 18, 2017
Page 2

On that screen, the user has the opportunity to scroll all the way through the text of the Terms of Service, and must press a button at the bottom marked "I accept" to proceed with using the Lyft App.  According to Lyft's records, Mr. Chaudhry accepted the updated Lyft Terms of Service through the Lyft App on October 4, 2016.

The Terms of Service (which Mr. Chaudhry attached as Exhibit A to the complaint) informed Mr. Chaudhry at the outset that he is required "TO SUBMIT CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, GROUP OR REPRESENTATIVE ACTION OR PROCEEDING."  Compl. Ex. A at 1 (capitalization in original).  And the arbitration provision itself obligates both parties to submit to binding arbitration "ALL DISPUTES AND CLAIMS BETWEEN US," with limited exceptions not relevant here.  *Id.* §§ 17(a), (g).  Drivers may opt out of the arbitration provision without penalty by email or mail within 30 days after executing the agreement.  *Id.* § 17(j)).  Lyft's records show that Mr. Chaudhry did not opt out of arbitration.

Mr. Chaudhry validly assented to the arbitration provision in the Lyft Terms of Service under this process. Indeed, he appears to concede that these Terms govern his relationship with Lyft, as he attaches them to his complaint and brings a breach of contract claim based on the Terms. Compl. ¶¶ 110-123 & Ex. A.  Moreover, Judge Koeltl has compelled arbitration based on the plaintiff's assent to the same September 30, 2016 Terms of Service under the same process described above.  *See Applebaum v. Lyft, Inc.*, 2017 WL 2774153, at *9-11 (S.D.N.Y. June 26, 2017).  And the method of contract formation here—presenting the full scrollable text of the terms and requiring the user to press a button saying "I accept"—is in fact more robust than the contract-formation process recently approved by the Second Circuit in *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017), in which the full contract terms were available by hyperlink and the button the user had to press said "Register."[2]

Mr. Chaudhry also has no basis to challenge the enforceability of his arbitration agreement's terms.  Any challenge on state-law grounds to the fact that Lyft's arbitration provision prohibits class actions, for example, would be futile under binding Supreme Court precedent.  The Supreme Court has held that any state-law rule "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a

---

[2]    Lyft will also show that Mr. Chaudhry assented to earlier versions of Lyft's Terms of Service, which included an arbitration provision as well.  Courts have enforced the arbitration provision in earlier versions of Lyft's Terms of Service. *See, e.g.*, *Bekele v. Lyft, Inc.*, 199 F. Supp. 284 (D. Mass. 2016), *appeal pending*, No. 16-2109 (1st Cir.); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015).

Mayer Brown LLP

The Honorable Frederic Block
December 18, 2017
Page 3

law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it.").[3]

Finally, when, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also*, *e.g.*, *Katz v. Cellco P'Ship*, 794 F.3d 341 (2d Cir. 2015).

For these reasons, and others to be set forth in its proposed motion, Lyft requests permission from this Court to move to compel arbitration of plaintiff's claims and to stay all proceedings pending the outcome of arbitration.

Respectfully submitted,

/s/Archis A. Parasharami
*Counsel for Defendant Lyft, Inc.*

CC (via ECF):  All counsel of record

---

[3]     We recognize that some plaintiffs have argued, based on a position taken by the NLRB, that the National Labor Relations Act renders a class-action waiver unenforceable in some contexts.  But the Second Circuit rejected that argument in *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013).  The issue is currently pending before the Supreme Court, which heard oral argument on October 2, 2017 in a trio of consolidated cases. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, No. 16-285 (S. Ct.).